IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL EAGAN,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES J. GORY,<br><br>        Defendant. | Civil No. 07-823 (JS) |

## MEMORANDUM OF DECISION

This Memorandum of Decision serves as the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, in connection with the parties' non-jury trial. Pursuant to 28 U.S.C. §636(c), the parties consented to the jurisdiction of this Court to preside over the trial. The only testifying witnesses were plaintiff and defendant.

Plaintiff's complaint was originally filed in Gloucester County, Superior Court of New Jersey on December 27, 2006. Defendant removed the case to this court on February 20, 2007. The court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).

This case involves a dispute between a father (defendant) and his former son-in-law (plaintiff). Plaintiff alleges the parties' entered into a partnership to flip houses. Plaintiff also alleges the partnership continued after he and his former wife, defendant's daughter, separated and divorced. Defendant contends that no

partnership ever existed and that his business arrangement with plaintiff lasted only so long as plaintiff remained faithful and married to his daughter.  In addition to plaintiff's claim, defendant filed a counterclaim for the repayment of a $75,000 loan to plaintiff.  For the reasons to be discussed, the Court finds in favor of defendant on plaintiff's claim and in favor of defendant and against plaintiff on defendant's counterclaim.

FINDINGS OF FACT

Plaintiff, Michael Eagan, is the former son-in-law of defendant, James J. Gory.  Plaintiff was married to defendant's daughter, Jennifer, on May 18, 2002.  Plaintiff and Jennifer separated in August 2004 and were divorced on January 31, 2005. (Trial Transcript ("T")39:1-5; Joint Final Pretrial Order, Stipulated Facts ("Stip. Facts") at ¶4).  Plaintiff's only claim is that defendant breached a partnership agreement entered into in April or May of 2001, regarding the profits from the sale of three properties.  Plaintiff is not seeking the payment of wages, reimbursement of costs, a quantum meruit award or breach of contract damages.  Plaintiff is merely claiming that he is entitled to his 50% partnership share of the profits from the sale of three properties.

During the relevant time period plaintiff worked as a real estate agent and as a sideline located properties, purchased them, fixed them up and sold them. (T 17:1-15).  Plaintiff testified that

approximately one year before his marriage on May 18, 2002, he spoke with defendant about his "sideline." Although plaintiff was not married to Jennifer at the time, defendant knew his daughter was living with plaintiff and understood they were going to marry. Plaintiff and Jennifer were engaged in the Spring of 2001 around the same time as plaintiff's "preliminary discussions" with defendant. (T59:2-13). Plaintiff testified that sometime thereafter he and defendant entered into an oral partnership agreement whereby he would locate properties in New Jersey and "orchestrate the property getting fixed up and sold." (T18:3-10). Plaintiff testified he and defendant agreed that defendant would pay all money to buy and fix the properties and they would split the profits equally when the properties were sold. (T18:3-10, 19-23). Plaintiff did not submit any evidence of specifically when and where the agreement was finalized. Plaintiff acknowledges that his alleged agreement with defendant was not reduced to writing. In August 2004, Jennifer learned plaintiff had an extramarital affair with another woman and plaintiff and Jennifer separated. (T67:16-24). Plaintiff and Jennifer divorced on January 31, 2005.

Defendant does not dispute that he entered into an "agreement" with plaintiff to flip houses but claims the agreement ended in August 2004. (T82:3-17). In addition, defendant denies he ever entered into a partnership agreement or partnership with plaintiff. (T90:18-21). Defendant claims that each property he purchased was

3

a separate agreement.  (T86:2-10).  Defendant testified that he decided to give plaintiff half the profit from four sales because he thought that Jennifer was the beneficiary of the money.  (Id.) However, it turned out Jennifer was not the beneficiary of the money.  (Id.) Defendant also testified he had the discretion to decide how much profit from each sale to give plaintiff.  Defendant argues there was no partnership as evidenced by the fact that the parties never had a joint capital account, the partnership did not have a name, none of the relevant paperwork referred to a partnership, the parties never held themselves out to third parties as partners and defendant had full discretion to decide what properties to buy and sell.

Between May 25, 2001 and September 2003, during the time plaintiff and Jennifer were engaged or happily married, defendant purchased and sold four properties, reimbursed plaintiff for his out-of-pocket expenses associated with the properties, and gave plaintiff 50% of the profit from the sales.  A summary of the stipulated relevant information regarding these four properties is as follows (Exhibit 28):

4

|                | **Purchase Date** | **Sale Date**   | **Expenses/Fees** | **Net Profit** |
|----------------|-------------------|-----------------|-------------------|----------------|
| Crescent Blvd. | May 25, 2001      | December 2001   | $14,337           | $66,691        |
| N. Weymouth Ave. | July 2002       | August 2003     | $54,909           | $92,546        |
| Anderson Ave.  | August 2002       | September 2003  | $41,097           | $61,687        |
| Oakton Dr.     | January 2002      | March 2002      | $1,230            | $59,168        |
| Total          |                   |                 | $111,573          | $280,092       |

The dispute in this case involves profits from the sales of three properties. A summary of the stipulated relevant information regarding these properties follows (Exhibit 28b):

|                                      | **Purchase Date** | **Sale Date**  | **Expenses/Fees** | **Net Profit** |
|--------------------------------------|-------------------|----------------|-------------------|----------------|
| Rowan Univ. (722 Mullica Hill Rd.)   | April 2002        | June 2006      | $52,977           | $304,247.      |
| Tremont Ave.*                        | June 2002         | January 2004   | $15,026.77        | $16,973.23     |
| New York Ave.                        | August 2003       | October 2005   | $92,280.20        | $145,793.05    |
| Total                                |                   |                | $160,283.97       | $462,457.03    |

*Sold subject to $70,200 mortgage, balance outstanding as of July, 2005.

Plaintiff's only claim is that he is entitled to a 50% partnership share of the $462,457.03 profit earned from the sales of the

5

foregoing three properties.[1] It is evident that the two properties that generated the majority of the claimed profit were purchased while plaintiff and Jennifer were together but were sold after they divorced in January 2005.[2]

Aside from the parties' real estate dealings defendant loaned plaintiff $75,000 to be used for improvements and repairs to the house in which plaintiff and Jennifer were living in Wildwood, New Jersey. (T91:23-25 to 92:1-24; Stip. Facts at ¶5). Plaintiff did not use the money for its intended purpose and he did not repay the loan. Plaintiff does not contest that he owes defendant $75,000. (T10:4-8; Stip. Facts at ¶6).

---

[1] The Court acknowledges that in plaintiff's post-trial "Proposed Conclusions of Law" he referred to a "breach of agreement contract cause of action." However, the Court will not consider this breach of contract claim because it was not included in the Joint Final Pretrial Order ("JFPO") [Doc. No. 24]. The only cause of action referenced in the JFPO is the breach of an alleged partnership agreement. Id. at Part I.A. This is buttressed by the fact that the parties' Joint Request for [Jury] Charge Nos. 4 and 5 only referred to plaintiff's partnership theory of liability. See United States v. E.B. Hougham, 364 U.S. 310, 314 (1960)(the pretrial order "conclusively established the issues of fact and law in the case" and supplemented the pleadings and governed the course of the trial); Basista v. Weir, 340 F.2d 74, 85 (3d Cir. 1965)("[i]t is, of course, established law that a pretrial order when entered limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order"); Metal Processing, Inc. V. Humm, 56 F.Supp. 2d 455, 471 (D.N.J. 1999)(issues not raised in a pretrial order are waived).

[2] In fact, since it appears that a mortgage is still outstanding on the Tremont Avenue property, defendant has not yet earned a "profit" on this transaction.

6

CONCLUSIONS OF LAW

The parties agree, and the Court finds, that New Jersey law applies. The applicable New Jersey legal principles are a combination of statutory and case law. Pursuant to New Jersey's Uniform Partnership Act (1996)("UPA") N.J.S.A. 42:1A-1, et seq., a partnership is defined as "an association of two or more persons to carry on as co-owners of a business for profit formed under Section 10 of this act [N.J.S.A. §42:1A-10], predecessor law, or comparable law of another jurisdiction." N.J.S.A. 42:1A-2. A "partnership agreement" is "the agreement, whether written, oral, or implied, among the partners concerning the partnership, including amendments to the partnership agreement." Id. A partnership can be established in fact, arising out of contract, or implied through the parties' conduct. Spitz v. Koplitz, 2007 WL 486742, at *3 (N.J. Super. Ct. App. Div. Feb. 16, 2007).

To determine whether a partnership exists a court should examine the surrounding circumstances, the intent of the parties and the parties' conduct. Sarner v. Sarner, 62 N.J. Super. 41, 53, 162 A.2d 117, 123 (1960), on subsequent appeal, 38 N.J. 463, 185 A.2d 851 (1962). The burden of establishing that a partnership exists is on the party who alleges it exists. Brodsky v. Perth Amboy Nat. Bank, 259 F.2d 705, 706-07 (3d Cir. 1958); Tuxedo Beach Club Corporation v. City Federal Savings Bank, 749 F. Supp. 635 (D.N.J. 1990). The factors to examine to determine if a

7

partnership exists include the intention of the parties, the obligation to share in loses, ownership and control of partnership property and business, community of power and administration, language used in the partnership agreement, conduct of the parties toward third persons, and rights of the parties upon dissolution. Tuxedo Beach, 749 F. Supp. at 646-47.  Another factor to consider is whether the parties share profits.  Id. at 646.  The Court has examined all of these factors and finds that no partnership existed between plaintiff and defendant.  Stated another way, plaintiff has not satisfied his burden of proving that he and the defendant entered into a partnership agreement.

Given the respective circumstances of plaintiff and defendant, the Court finds that defendant did not intend to enter into a partnership with plaintiff.  The evidence demonstrates that the only reason defendant entered into any kind of relationship with plaintiff was to assist his daughter.  It is evident that plaintiff was not in a good financial position shortly before he married Jennifer. This is evidenced by the fact that Jennifer bought plaintiff's property in which the couple were living because it was being foreclosed.  (T56:7-23).  In addition, plaintiff had to borrow $75,000 from defendant to repair the premises because it was in poor condition. (T92:7-24).  The Court finds defendant offered to assist plaintiff make some money in the then booming real estate market because he was a concerned father, not because he intended

8

to be partners with plaintiff.  From all indications defendant was already a successful businessman and apart from his interest in his daughter, defendant had no reason to do business with plaintiff. It is evident to the Court that defendant intended to associate with plaintiff for only as long as plaintiff was married to Jennifer.  When the marriage failed, so too did any business relationship between plaintiff and defendant.  The Court does not accept plaintiff's position that the parties' business relationship survived his marriage, which effectively ended in August, 2004. Plaintiff knew he was not entering into an arm's length business transaction with defendant.  The Court infers from the evidence, and so finds, that plaintiff knew the only reason defendant associated with him was because of his financial distress and defendant's intent to help his daughter.  Accordingly, the Court also finds that plaintiff had to have known that as soon as his marriage deteriorated, so too did his business relationship with defendant.[3]

As noted, another factor to consider in analyzing whether a partnership existed between plaintiff and defendant is whether there was an obligation on both parties to share losses.   In

---

[3]The Court recognizes that the parties' intent is only one factor to examine to determine if a partnership existed.  The Court also recognizes that a partnership may exist even if the interested parties do not intend to form a partnership.  N.J.S.A. 42:1A-10.a.  Thus, while the intent of the parties is a factor this Court must examine to decide if a partnership existed, it is not determinative.

9

fact, "[s]haring losses of a business is one of the most important indicia of a partnership...." Yonadi v. Commissioner of Internal Revenue Service, 21 F.3d 12902, 1297 (3d Cir. 1994).  See also Cornell v. Redrow, 60 N.J. Eq. 251, 47 A.56, 57 (1900).  The parties did not submit any evidence on this topic.  However, the Court finds the obligation to share losses did not exist because plaintiff did not have the resources to pay any losses.  Given the parties' respective financial positions, if the parties real estate transactions had resulted in a loss the Court is confident that plaintiff would not have assumed responsibility for a portion of the loss, and defendant would not have sought recoupment from plaintiff.  Thus, this factor weighs in favor of defendant.  See Cornell, supra (where there was an agreement whereby plaintiff would render services for defendant's business, and receive a sum each week and half of the profits, but there was no understanding plaintiff would share in the losses, a partnership did not exist).

In examining whether a partnership exists courts also examine the ownership and control of partnership property and business, and the community of power and administration.  These factors also weigh in favor of defendant.  The parties did not maintain a capital or bank account and plaintiff did not contribute any capital to the alleged partnership.  In addition, plaintiff did not have the authority or ability to make any significant decisions regarding the parties' real estate transactions.  (T60:7-22).

10

Defendant, not plaintiff, decided what properties to buy and sell, the purchase and sale price, and when and whether any transactions would take place. In addition, the parties did not share mutual control over any significant property and they did not share power and administration over any material decision. Defendant, not plaintiff, had the sole right to make all significant decisions regarding the parties' dealings. In Farris v. Farris Engineering Corp., 7 N.J. 487, 503, 81 A.2d 731, 739 (1951), the Court wrote that, "[o]ne of the real tests of a partnership is the inquiry whether the agreement was of such a nature that the one was the agent for the other or others." This indicia of a partnership is completely lacking in this case.[4]

Another factor that weighs in favor of defendant is the language of the parties' alleged agreement. A partnership may be implied even though the parties do not have a written partnership agreement. Spitz, supra. However, what is significant here is that the parties never used the word partner, either in writing or orally. In fact, the parties never memorialized any formal business arrangement. This course of conduct is consistent with defendant's position that no partnership existed and he had the

---

[4] It is not insignificant that plaintiff did not submit any evidence that before his lawsuit was filed in December 2006, he attempted to collect on the proceeds of the Tremont Avenue property that was purchased and sold before plaintiff's extramarital affair in August 2004. This evidences plaintiff's acknowledgment that defendant had the discretion to decide when and how much to pay plaintiff.

11

unfettered discretion to decide what and when to pay plaintiff. This is not how partners conduct business.

Another significant factor that weighs in defendant's favor is that the parties never represented themselves to third parties as partners. Not a single writing has been produced that memorializes any business arrangement between the parties. This includes all of the myriad of documents that are executed in connection with a real estate closing (e.g., contracts, deeds, closing statements, etc.). To determine whether a partnership exists courts also look at the rights of parties upon dissolution. In this case the parties had no specific discussions regarding this topic. Plaintiff's failure to cite to any evidence regarding the parties' respective rights upon the ending of their relationship weighs in defendant's favor. If a partnership existed, this topic would have been addressed.

Plaintiff's best evidence that a partnership existed is defendant's payments to him on three occasions. However, it is well settled that not every business arrangement where someone shares profits is a partnership. Farris, supra, 7 N.J. at 503-04, 81 A.2d at 739; Fenwick v. Unemployment Compensation Commission, 133 N.J.L. 295, 298, 44 A.2d 172, 174 (1945); Bloom v. Clara Maass Medial Center, 295 N.J. Super. 594, 611, 685 A.2d 966, 974 (App. Div. 1996). In this case, the parties shared real estate profits on four occasions. Pursuant to N.J.S.A. 42:1-7, the "receipt by a person of a share of the profits of a business is prima facie

12

evidence that he is a partner in the business." However, the Court finds that this prima facie evidence has been rebutted by the evidence already summarized by the Court. Defendant's payments to plaintiff were a generous gesture to help his daughter. The money was not a payment of a partnership share. Further, no inference under N.J.S.A. 42:1-7 shall be drawn if the profits were received in payment of wages. Id. at 4.b. Defendant's payments to plaintiff were akin to a payment of wages, not the payment of a partnership share.

Although every case that decides whether a partnership exists is fact specific, the weight of authority supports defendant. See Alampi v. Pegasus Group, L.L.C., 2008 WL 140952, at *5-6(N.J. Super. Ct. App. Div. Jan. 16, 2008)(finding no partnership existed where there was no express contract of partnership between the parties, no joint ownership of partnership property and no proof of the acting of any of the alleged partners for the others); Bloom, supra (even though plaintiff shared in the profits, no partnership existed because the defendant doctor exclusively controlled the management of the business); Jernee v. Simonson, 58 N.J. Eq. 282, 43 A. 370 (1899)(where one party holds title to all the property used in the conduct of a business, and has the exclusive possession and control of both the property and the business, but by agreement the other shares the profits, there in no partnership).

An instructive case is Fenwick v. Unemployment Compensation Commission, 133 N.J.L. 295, 44 A.2d 172 (1945). In Fenwick the

13

Court reversed a finding that the plaintiff was a partner rather than an employee.  Even though the plaintiff's written agreement with his employer provided that the parties associated themselves as a partnership and shared in the profits of a business, the Court held that no partnership existed.  The compelling facts to the Court were that plaintiff did not share in the losses of the business, plaintiff did not control the business, plaintiff did not have a right to share in capital upon dissolution of the business, the exclusive control and management of the company rested with someone else, and plaintiff never held herself out to a third party as a partner.  Based on these facts the Court held that "the element of co-ownership ... [was] lacking."  133 N.J.L. at 300, 44 A.2d at 175.  Essentially the same situation that existed in Fenwick exists in this case.

The Court emphasizes that plaintiff's only claim in the case is that he was defendant's partner and he is entitled to his 50% partnership share of the profits from the sale of the three properties at issue.  For the reasons discussed, the Court finds that plaintiff and defendant were not partners and no partnership existed.  The Court does not have to decide if plaintiff is entitled to any wages, reimbursement of costs, a quantum meruit award or breach of contract damages because plaintiff did not present these claims.  In addition, because plaintiff's only claim relates to his alleged partnership status, the Court does not have to decide plaintiff's precise legal status vis-a-vis defendant,

14

e.g., employee, joint venturer, etc. As already discussed, most if not all of the factors relevant to determining whether a partnership existed weigh in defendant's favor. The Court, therefore, finds that plaintiff has not satisfied his burden of proving that a partnership existed.

Plaintiff's reliance on White v. Caesar, 302 N.J. Super. 318, 695 A.2d 350 (App. Div. 1997), is misplaced. In that case the plaintiff was in a law partnership with defendants and entered into an oral agreement to receive five percent of the profits. After the partnership disbanded plaintiff alleged he was entitled to a one-third interest in the dissolved partnership rather than a five percent interest. The Appellate Division affirmed the trial judge's decision awarding plaintiff only five percent. The White decision is inapposite to the case before this Court. Here, the issue is whether plaintiff and defendant entered into a partnership. In White the parties had to decide the percentage of plaintiff's interest in a dissolved partnership.

As to defendant's breach of contract counterclaim for $75,000, judgment will be entered in defendant's favor. Plaintiff concedes that defendant loaned him $75,000 to repair his property, he did not use the money for that purpose, and that he has a duty to pay back the money. The Court, however, denies any claim for interest on the debt owed. Defendant presented no evidence that he expected interest on the loan and that plaintiff agreed to pay interest.

15

CONCLUSION

Based on the foregoing, and for all the reasons discussed herein, the Court finds in favor of defendant on plaintiff's claim and will enter a Judgment of No Cause of Action in defendant's favor. The Court further finds in favor of defendant on his counterclaim against plaintiff and will enter Judgment in defendant's favor and against plaintiff for $75,000. A Judgment consistent with this Memorandum of Decision will be entered.

s/Joel Schneider<br>
Joel Schneider<br>
United States Magistrate Judge

Dated: February 24, 2009